IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Paul R. Sablan
24302 30th Avenue Court East          No.:_____
Spanaway, WA 98387
*Plaintiff*


v.


Frank Kendall, III
Secretary of the Air Force
1670 Air Force Pentagon,
Washington, DC 20330-1670
*Defendant*

---

## Complaint for Declaratory and Other Relief

Paul Sablan [hereinafter Plaintiff] submits this collateral action against Defendant seeking declaratory and other relief from a general court-martial conviction. A Convening Authority subordinate to the Secretary of the Air Force has purported to publish orders giving to Plaintiff's court-martial conviction final effect. Article 76, Uniform Code of Military Justice (10 U.S.C. § 876)(2012) [hereinafter UCMJ]. Plaintiff seeks relief because the findings of the court-martial which tried him are void as to Charge I and Charge III, Specifications 2-4.

## Jurisdiction

1. The Court has jurisdiction under 28 U.S.C. § 1331. The federal questions arise under the Uniform Code of Military Justice, 10 U.S.C. §§ 801-940, and the Manual for Courts-Martial, United States, an Executive Order with the force of law.

**Venue**

2. Venue is proper in this district because Defendant in.  28 U.S.C. § 1391(e).  A service secretary may be present within more than one federal district for the purposes of venue and is considered present within the federal district for the District of Columbia when he performs a significant amount of his duties there. *Smith v. Dalton*, 927 F. Supp. 1, 5-6 (D.D.C 2004).

**Parties**

3. Plaintiff is a former Airman in the United States Air Force.

4. Defendant is the Secretary of the Air Force.  Defendant is named in his official capacity.

**Facts relevant to the Complaint**

5.  Mr. Sablan met JV at a local mall shortly after he arrived at his duty station, Luke Air Force Base, on 1 May 2002. (R. at 217, 250). JV falsely claimed her name was "Melissa."  (R. at 67, 217).[1] Mr. Sablan was twenty years old at the time.  (R. at 67). JV lied and said she was eighteen.  She was actually fifteen.  (R.

---

[1] Plaintiff cites to the military record of trial.  Plaintiff will request from the government the authenticated version thereof, which plaintiff will attach upon receipt from the government.  Fed. R. Civ. Pro. 34.

at 217). Senior Airman Joshua Hollenbaugh was present with Plaintiff. He heard JV tell Mr. Sablan that she was eighteen. (R. at 250).

6. At some point between their initial meeting and 27 September 2002, JV and Mr. Sablan met for a second time. (R. at 68). Mr. Sablan asked JV whether the phone number she provided was really hers because an elderly woman answered when he called. *Id.* JV and her sister, who accompanied JV, falsely told Mr. Sablan that the elderly woman was their grandmother. *Id.* Mr. Sablan provided JV with a phone number at which he could be reached. *Id.* After that, JV gave Mr. Sablan her correct phone number. (R. at 69). He kissed her hand when they parted that evening. *Id.* After this meeting, JV began to call Mr. Sablan "sweet pea," because of how nicely he treated her. (R. at 70).

7. Independent witnesses corroborate Mr. Sablan's assertion that JV told him she was eighteen years old. (R. at 250). JV admitted to repeatedly lying about her age in the past. (R. at 70-71).

8. On the evening of 27 September 2002, Mr. Sablan spoke to JV on the telephone, and they made plans to spend the evening together. (R. at 217). Mr. Sablan told JV that he was drinking alcohol with his friends in his dormitory[2] room. JV agreed to join them. (R. at 218 and 231). JV lied to her mother and said that she was going to the movies with friends. (R. at 111). Mr. Sablan believed

---

[2] "Dormitory" is the doctrinal term that the Air Force uses for the housing facility that the Air Force provides to unmarried or unaccompanied enlisted personnel.

3

that JV was eighteen years-old and that her name was "Melissa." (R. at 218 and 221).

9. One of Mr. Sablan's friends, Airman Dave Arias, received directions to JV's residence and drove Mr. Sablan to JV's home to pick her up. (R. at 219). Airman Arias and Mr. Sablan picked up JV outside of her apartment complex at approximately 2200. *Id*. Mr. Sablan thought that JV's appearance was attractive and was happy that she liked him. (R. at 230). Airman Arias drove Mr. Sablan and JV back to Luke AFB. They entered onto Luke AFB around 2230. (R. at 219). Base security did not require JV to produce identification or to undergo processing for a base visitor pass. (R. at 220, 233). The three proceeded directly to Mr. Sablan's dormitory after entering the gate. (R. at 220).

10. There was alcohol already in Mr. Sablan's barracks room that an unknown third party purchased. *Id*. Approximately eight people socialized in Mr. Sablan's dormitory suite. (R. at 168). Mr. Sablan introduced JV to one of the airmen, Senior Airman Timothy Diamond. He described her as an eighteen-year-old community college student. (R. at 169). This was consistent with how JV described herself to Airman Arias. (R. at 79).

11. Mr. Sablan mixed himself a drink containing liquor. He offered JV a sip. (R. at 221). JV took a sip, said she liked it, and continued to drink it while Mr. Sablan made himself another drink. *Id*. Meanwhile, Mr. Sablan, JV, and others played drinking games together and were enjoying each other's company. *Id*. Mr.

4

Sablan and JV flirted with each other. (R. at 221-22). In the presence of others, JV sat in Mr. Sablan's lap, and the two kissed each other. (R. at 190, 222).

12. Mr. Sablan noticed that JV was becoming tipsy. He gave his phone to JV so she could call her mother. *Id*. JV admitted that Mr. Sablan encouraged her to call her mother. (R. at 113). JV took Mr. Sablan's phone. She told Mr. Sablan that she could not get in touch with her mother. (R. at 223).

13. Later in the early morning hours of 28 September 2002, JV started to become sick from excessive alcohol consumption. (R. at 83). Although he was "buzzed," Mr. Sablan did not become intoxicated. (R. at 234. Mr. Sablan allowed JV to enter his bedroom to sit on his bed. (R. at 223). JV told Mr. Sablan that she was going to be sick, so Mr. Sablan handed her a trashcan into which she could vomit. *Id*. At one point, Mr. Sablan had to help JV walk. (R. at 237). Mr. Sablan rubbed JV's back and offered her water and bread while she was vomited. (R. at 223). He left the door open while JV was sick. Mr. Sablan's friends walked in and out of the room while JV was vomiting. (R. at 223-24). At some point, one of Mr. Sablan's friends smacked JV on her rear end, and Mr. Sablan told everybody to leave his room. (R. at 224).

14. Mr. Sablan's friends, specifically Senior Airman Diamond and Airman Arias, ribbed Mr. Sablan while he was taking care of JV. (R. at 225). They came into the room through his window. *Id*. At some point, they asked Mr. Sablan to

speak with them in the kitchen area of the dormitory suite. *Id*. Mr. Sablan, fully clothed, complied. *Id.*

15. Senior Airman Diamond and Airman Arias had rifled through JV's belonging. They showed Mr. Sablan two forms of identification that indicated JV was a freshman in high school. Mr. Sablan realized that JV had lied and was visibly shocked. (R. at 178, 225). Mr. Sablan's friends warned Mr. Sablan to avoid sexual contact with JV. They then left, at 0400. At this time, both Mr. Sablan and JV were fully clothed, and JV was vomiting in Mr. Sablan's room. *Id*.

16. After discovering JV's true name and age, Mr. Sablan returned to his room. (R. at 226). Mr. Sablan sat next to JV and asked her if her name was "Melissa." *Id*. JV replied with "no." *Id*. Mr. Sablan then asked how old she was. *Id*. at 227. After some prevarication, JV replied "fifteen." *Id*. Mr. Sablan asked why she lied to him, and she replied that she was afraid Mr. Sablan would not be interested in her if he had known her true age. *Id*.

17. Mr. Sablan subsequently laid down in his dormitory room. (R. at 227, 242). He did not kiss JV after he discovered that she was 15. (R. at 227). He did not engage in sexual conduct with her. *Id.* Later that morning, still on 28 September 2002, JV's mother called Mr. Sablan and his roommate. (R. at 228). Mr. Sablan's roommate handed him the phone. *Id*. JV's mother asked to speak with JV, so Mr. Sablan handed JV the phone. *Id*. JV hung up on her mother. *Id*.

JV's mother called back immediately, but JV would not again speak with her mother. *Id*.

18. Mr. Sablan offered to take JV home after she hung up on her mother. *Id*. She instead requested that Mr. Sablan drop her off at a bus stop. *Id*. Mr. Sablan drove JV to a bus stop and ensured that she boarded a bus. *Id*.

19. JV subsequently claimed that Mr. Sablan licked her breasts, kissed her above her shoulders, performed oral sex on her, digitally penetrated her vagina, and penetrated her vagina with his penis. (R. at 89-90). JV testified that her clothes were removed, and Mr. Sablan was the only one in the room at that time. (R. at 88-89).

20. JV underwent a Sexual Assault Forensic Examination [SAFE]. (R. at 155-56). JV had no injuries at all. *Id.* The SAFE did not recover any of Mr. Sablan's semen. (R. at 200-08).

21. An expert witness from the United States Army Criminal Investigations Laboratory (USACIL) testified that (1) no analysis was conducted on Mr. Sablan's bed sheets, (2) there were no serological stains located on the sheets, (3) "there was no DNA that would link [Mr. Sablan] to the semen that was found," and (4) despite JV's claims of extensive physical interaction with Mr. Sablan, "the only DNA evidence that was observed in this case was DNA that matched [JV]. (R. at 200-08).

22. The Convening Authority referred three Charges and seven Specifications to a court-martial he convened.  App. Ex. XX.  Mr. Sablan pled guilty to one specification of dereliction of duty in violation of Article 92, UCMJ. The panel found Mr. Sablan guilty of one Charge and Specification of rape in violation of Article 120, UCMJ and one Charge and three Specifications of Dereliction of Duty, in violation of Article 92, UCMJ.  The panel acquitted Mr. Sablan of sodomy, in violation of Article 125, UCMJ.  *Id.*  The court-martial then proceeded into its presentencing phase. Prior to announcing its sentence[3], the military judge permitted the panel to make the following special finding:

> "Based on the evidence given, we the members believe that SrA Sablan made several poor choices on the night of September 27th, 2002. Prior to reading the sentence we would like to **clarify our findings**. We do not consider SrA Sablan a danger to others and we believe that his actions **were based on several misconceptions**. We believe that SrA Sablan is not, nor ever has been a detriment to society. Based on the evidence given and the testimony of all parties, we feel the sentence we are about to set forth is fair and just."

(R. at 383)(emphasis added).

23. Although plaintiff is not in possession of the complete, authenticated record of trial, Mr. Sablan states on information and belief that the record contains no proof that Mr. Sablan knew of any duty that he allegedly breeched in Charge III, Specifications 2-4.  Further, as to the Specifications 2-4 of Charge III, Mr.

---

[3] At the time, the UCMJ and the Rules for Courts-Martial directed a panel to impose sentence where the panel had sat as finder of fact.  Congress subsequently amended the UCMJ, but the relevant amendments are not retroactive.

Sablan states on information and belief that the record contains no proof that any order was a general order, where such order allegedly created any duty the performance of which Mr. Sablan was alleged to be derelict.

### Causes of Action (collateral review of a court-martial conviction)

24. **Count I – voidness of Charge I:** This court should collaterally review appellant's case and grant declaratory or such other relief to Mr. Sablan because the special findings which the panel issued are legally inconsistent with the *mens rea* required for rape and render the findings as to Charge I void. Mr. Sablan incorporates by reference paragraphs 5-23 into this count.

25. **Count II – voidness of Charge III, Specifications 2-4:** This court should collaterally review Charge III, Specifications 2-4 and find that the findings are void because of fatal defects in proof. Specifically, Mr. Sablan avers that the lack of proof that any relevant order was a general order, or proof that Mr. Sablan knew of the duty renders Charges III, Specifications 2-4 legally insufficient and thus void. Mr. Sablan incorporates by reference paragraphs 5-23 into this count.

### Consideration of Plaintiff's claim

26. Plaintiff respectfully moves this court to delay disposition of this matter until such time as the military record of trial is attached to the record here. Defendant Secretary of the Air Force is custodian of said record. Plaintiff will serve a discovery request upon the United States as soon as opposing counsel enters an appearance.

## **Conclusion**

Plaintiff prays that the Court enter judgment—

(a) declaring that the findings as to Charge I are void because the panel entered special findings which had the effect of voiding their general verdict and finding Mr. Sablan Not Guilty as to that Charge.

(b) declaring that the findings as to Charge III, Specifications 2-4 are void because they are legally insufficient.

(c) ordering that his conviction and sentence be expunged and that all rights, privileges, and property of which he has been deprived by reason of the sentence be restored; and

(d) granting such other and further relief as may in the circumstances be just and proper.

/s/
Robert Feldmeier
Attorney-at-law
THE LAW OFFICES OF ROBERT FELDMEIER
2920 Forestville Road, Suite 100-1076
Raleigh, North Carolina 27616
336-416-2479
robert.a.feldmeier@gmail.com